IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| IN RE: ASBESTOS PRODUCT LIABILITY LITIGATION (No. VI) | Consolidated Under MDL DOCKET NO. 875 |
| This Document Relates To: | E.D.WI (Milwaukee) |
| Marybeth Nuutinen, Individually and as Special Administrator of the Estate of Charles H. Nuutinen, Deceased, Plaintiff, | Case No. 97-CV-678 |
| v. | |
| CBS Corporation, et al., Defendants. | |

**DEFENDANT CBS CORPORATION'S FED. R. CIV. P. 56(c) MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant CBS Corporation ("Westinghouse")[1] pursuant to Fed. R. Civ. P. 56(c), this Court's Order dated March 4, 2015 (*See* ECF Document 182), and this Court's request that Westinghouse refile its Memorandum of Law in Support of its Motion for Summary Judgment original filed on February 11, 2015 a motion to the Court, and so now moves this Court for an Order granting summary judgment its favor, and dismissing the entire action with prejudice. The grounds and basis for this motion are set forth in the accompanying memorandum of law and exhibits in support of the motion.

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

1

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

Defendant CBS Corporation ("Westinghouse") submits this Memorandum of Law in Support of its Motion for Summary Judgment. This case was previously pending in U.S. District Court for the Eastern District of Pennsylvania as part of the federal asbestos multi-district litigation, MDL 875. Though the MDL court denied Westinghouse's motion for summary judgment, the court did not rule on Westinghouse's contention that the Wisconsin statute of repose should apply to bar Plaintiff's claims of exposure to asbestos from Westinghouse turbines. (*March 24, 2014 Order, PA-ED Doc. #187* at 1, 10-12) (attached to Westinghouse's motion as Exhibit A.) Instead the court deemed it "appropriate to remand the issue to be addressed by the transferor court." (*Id.* at p. 10.) Accordingly, Westinghouse submits the instant motion and memorandum and requests that this Court consider this issue remanded by the MDL 875 court and grant summary judgment as to Plaintiff's turbine claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

Plaintiff's complaint was filed in 2009, alleging that the named defendants were responsible for Mr. Nuutinen's developing asbestos disease. (*Complaint*, ¶ 10) (attached to Westinghouse's motion as Exhibit B.)

Mr. Nuutinen was not deposed. Of the various co-workers offered to support Plaintiff's claims, only co-worker Gary Vohs offered any testimony in support of Plaintiff's claims against Westinghouse. Vohs testified that he worked with Mr. Nuutinen at Point Beach Power Plant ("Point Beach"). Mr. Vohs never worked directly on Westinghouse turbines at Point Beach. (*August 2, 2012 Deposition of Gary Vohs, ("Vohs vol. I")*, 86:9-

---

[2] In considering Westinghouse's motion, this Court must view the evidence and all inferences arising reasonably therefrom in the light most favorable to Plaintiff. *Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005); *Hogston*, 2009 WL 4583501 at *1. Westinghouse's "Statement of Undisputed Material Facts" reflects that standard and, as such, is offered solely for purposes of its motion and does not constitute its admission of any fact stated therein for any other purpose.

18) (attached to Westinghouse's motion as Exhibit C.) Mr. Vohs testified that he and Mr. Nuutinen worked at Point Beach while two Westinghouse turbines were being constructed in the 1960s and at least one other time for a shutdown. (*Id.* at 45:21-46:13 and 93:6-10.) Vohs did not have any information about whether Westinghouse required external insulation on the turbines at Point Beach. (*Id.* at 89:1-7.) Vohs testified that the total amount of time he and Mr. Nuutinen worked around Westinghouse turbines at Point Beach over his career would have been about a month. (*Id.* at 96:10-23.)

Subsequent to Mr. Vohs' first deposition, he signed a declaration in which he stated that he and Mr. Nuutinen worked within 50-100 feet of insulators who were working with block and cement insulation products and applying them to the Westinghouse turbines. (*Jan. 17, 2013 Decl. of Gary Vohs*) (attached to Westinghouse's motion as Exhibit D.) Mr. Vohs later testified that he recalled seeing this work for about one week. (*Nov. 15, 2013 Dep. of Gary Vohs ("Vohs vol. III")*, 32:2-17) (attached to Westinghouse's motion as Exhibit E.)

Mr. Vohs testified that he and Mr. Nuutinen were in the area of the Westinghouse turbine at Point Beach when mud and block insulation materials were being removed, though Mr. Vohs did not say when this occurred. (*Id.* at 15:10-16:11.) He recalled seeing Westinghouse personnel at Point Beach during shutdowns, though he could not say why they were there since they did not communicate with him directly. (*Vohs vol. I* at 49:6-20.) He did not know if the Westinghouse personnel communicated with his superintendents, general foremen, and foremen. (*Id.*)

Mr. Vohs further testified to seeing insulators remove insulation blankets from a valve so it could be worked on. (*Id.* at 91:11-93:12.) This occurred one time, during a shutdown in the early 1970s. (*Id.*) The valve was on a condensate line that was connected to the turbine by a flange. (*Id.*) Mr. Vohs believed that "the reason the blanket was on [the valve] is because somebody had removed it prior to see what the

3

problem was and covered it with a blanket." (*Id.*) He recalled that Mr. Nuutinen was in the general area when he saw this work. (*Id.*)

In his affidavit, former Westinghouse engineer Mr. Douglas M. Ware states that Westinghouse supplied two turbine generators to Point Beach. (*October 29, 2012 Affidavit of Douglas M. Ware* ("*Ware Aff.*"), ¶ 4) (attached to Westinghouse's motion as Exhibit F.) Westinghouse custom-designed these turbine-generator units according to site-specific specifications provided by the architect/engineer for Wisconsin Electric Power Company (*i.e.*, owner of Point Beach Station). (*Ware Aff.*, ¶ 5.) Prior to erection, permanent turbine-generator pads were constructed for these turbines, which involved driving pilings deep into the earth, performing excavation work, and then pouring of vast quantities of concrete. (*Ware Aff.*, ¶ 6.) The units were then constructed on their own specially-designed foundations and permanently anchored or attached to those foundations at numerous points. (*Id.*)

The actual design, planning, and construction of Point Beach Station's Westinghouse turbine-generators entailed the expenditure of thousands of man-hours of labor and were completed at substantial cost to the station's owner. (*Ware Aff.*, ¶ 7.) Westinghouse worked closely with the project's architect/engineer lending its own engineering expertise during the design, construction and start-up of these units. (*Id.*) A Westinghouse field service engineer was present on-site in a supervisory or advisory role during the construction and start-up of these units. (*Id.*)

Upon completion, the Westinghouse turbine-generators were permanent fixtures at Point Beach Station which were integral and, in fact, essential to the intended use of that structure (*i.e.*, the generation of electricity). (*Ware Aff.*, ¶¶ 6, 8.) Without these units, Point Beach Station could not have functioned as intended. (*Ware Aff.*, ¶ 8.) Turbine generator Units 1 and 2 became operational in 1970 and 1972, respectively. (*Ware Aff.* ¶ 4.)

4

## STANDARD APPLICABLE TO SUMMARY JUDGMENT MOTIONS

This court must enter summary judgment if no genuine issue remains and the undisputed evidence, instead, shows that the defendant is entitled to a judgment in its favor as a matter of law. FED. R. CIV. P. 56. The defendant must first identify "an absence of evidence to support [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once such a deficiency has been identified, the plaintiff must "go beyond the pleadings" and present admissible evidence tending to prove "specific facts showing that there is a genuine issue for trial" as to each essential element of her claims. *Id.*, at 323-24. *See also*, *Lexington Ins. Co.*, 423 F.3d at 322 n.2; *Hogston*, 2009 WL 4583501 at *1.

A "mere scintilla" of evidence cannot give rise to a genuine issue capable of defeating a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, "there must be evidence on which a jury might rely;" not evidence giving rise to mere speculation or conjecture as to the defendant's liability. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (*quoting*, *Seago v. North Carolina Theatres*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). *See also*, *Anderson*, 477 U.S at 252; *Lexington Ins. Co.*, 423 F.3d at 332-33; *Hogston*, 2009 WL 4583501 at *1.

As to its affirmative defense of repose, Westinghouse bears an initial burden of producing evidence sufficient to support a verdict in its favor as to each element of that defense. *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007); *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 (4th Cir. 1999). The burden then shifts to Plaintiff to "go beyond the pleadings" and present evidence tending to prove "specific facts showing that there is a genuine issue for trial." *Catrett*, 477 U.S. at 323-24. In short, once Westinghouse has shown its *prima facie* entitlement to assert an affirmative defense, this court should enter summary judgment unless Plaintiff presents

5

admissible evidence raising a genuine issue as to some basis for avoiding that defense. *El*, 479 F.3d at 237; *Brinkley*, 180 F.3d at 614.

## ARGUMENT

Plaintiff's claims as to Westinghouse turbine generators are barred by the Wisconsin statute of repose**.** Wisconsin's statute of repose, Wis. Stat. § 893.89, is intended to give certain parties relief, or repose, from the burden of liability for improvements to property after more than 10 years have passed since the improvements were put in place. The restriction on causes of action is found in subsection (2), which, as it applies to the claims against CBS in this case, provides as follows:

> (2) [N]o cause of action may accrue and no action may be commenced, . . . against any person involved in the improvement to real property after the end of the exposure period, to recover damages . . ., for any injury to the person, . . ., arising out of . . ., the construction of, or the furnishing of materials for, the improvement to real property.

The term "exposure period" is defined as "the 10 years immediately following the date of substantial completion[3] of the improvement to real property." Wis. Stat. § 893.89(1).

The effect of Wisconsin's construction statute of repose – Wis. Stat. § 893.89 – is that, with certain specific statutory exceptions, any claim which arises out of a "deficiency or defect" in the design or construction of an improvement to realty and which is brought against a party "involved in the improvement" must be brought within ten years of the improvement's substantial completion or be absolutely and forever barred. Wis. Stat. § 893.89(1)-(2). This statute is expressly retroactive, and applies regardless of whether the improvement was substantially completed "before, on or after April 29,

---

[3] For purposes of Wis. Stat. § 893.89, substantial completion is deemed to have been achieved as of the date on which the improvement is first put to its intended use by its owner. *Caldwell v. J.H. Findorf & Son.*, 283 Wis. 2d 508, 698 N.W.2d 132, 2005 WL 1077466 at *7 (Wis. App. Apr. 21, 2005) (*citing Holy Family Catholic Congregation v. Stubenrauch Assoc.,* 136 Wis. 2d 515, 402 N.W.2d 382 (Wis. App. 1987)).

6

1994." Wis. Stat. § 893.89(5). This statute of repose serves the constitutionally-acceptable legislative purpose of "provid[ing] protection from long-term liability for those involved in the improvement to real property." *Kohn v. Darlington Community Schls.*, 283 Wis. 2d 1, 39, 698 N.W.2d 794 (Wis. 2005) (emphasis deleted). Notably, as a true statute of repose rather than a mere statute of limitation, Wis. Stat. § 893.89 can act to "bar an action before the injury is discovered or before the injury even occurs." *Kohn*, 283 Wis. 2d at 26-27. In short, § 893.89 "does not merely extinguish a party's remedy, it extinguishes the right of recovery altogether." *Id.*

Whether a given item constitutes an improvement to realty for purposes of Wis. Stat. §893.89 presents a question of law for resolution by the court. *Kohn*, 283 Wis. 2d at 13. Stated simply, an "improvement" is any "'permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'" *Id.*, at 16 (*quoting Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 386, 225 N.W.2d 454 (1975)).

A given item need not be actually physically annexed to the realty in order to constitute an "improvement." *Kohn*, 283 Wis. at 17-19. Similarly, the fact that a structure could theoretically be disassembled and moved is not determinative, as "[a]lmost any structure that is assembled and installed can be disassembled and removed, even . . . a structure as large as the Eiffel Tower." *Id.*, at 19-20. Instead, the concept of permanency turns on "the nature of the alleged improvement and the intention of the party making the alleged improvement." *Id.* at 18-19. Thus, where a structure or item is, by its very nature, not readily-movable; where its installation involved the expenditure or time and capital; where it adds to the value of the property when put to it intended use; and where it was intended to remain indefinitely in place, the structure is an "improvement" for purposes of § 893.89. *Id.*, at 19.

7

Recently, the Wisconsin Court of Appeals distinguished between one who makes an improvement to real property and one who makes regular repairs and does maintenance. *Peter v. Sprinkmann Sons Corp.*, No. 2014AP923, 2015 WL 321551 at ¶¶ 22-23 (Wis. Ct. App. Jan. 27, 2015) (opinion attached to Westinghouse's motion as Exhibit G.) There, the defendant argued that the statute of repose should bar the plaintiff's claims of exposure to asbestos from regular, daily repairs that defendant made to pipe insulation in the plaintiff's vicinity. *Id.* at ¶¶ 22-24. The court, however, disagreed, stating that:

> [t]he purpose of the statute of repose is to protect contractors who are involved in permanent improvements to real property. Daily repairs are not improvements to real property as that phrase is used in the statute of repose . . . . This distinction is reasonable because improvements to real property have a completion date whereas regular repairs and maintenance can continue *ad infinitum*.

*Id.* at ¶ 23. The court went on to note that, while repair and maintenance of insulation was not an improvement to real property, "the initial installation of insulation into a building or house may be considered an improvement to real property." *Id.* at ¶ 24.

Under the basic provisions of subsection (2), and the Wisconsin Court of Appeals' *Peter* opinion, there can be no dispute that the Westinghouse turbine generators at Point Beach, as described by Mr. Ware, were improvements to real property.[4] (*See Ware Aff.*, ¶¶ 4-8.) Westinghouse was involved in every step of the construction of the turbine generators it supplied—from the design phase, through construction of the turbines generators, up to start up. (*Ware Aff.*, ¶ 7.) The last of the

---

[4] Though there is testimony that, at some unknown time, Mr. Nuutinen was in the vicinity when insulation materials were removed from the Westinghouse turbines at Point Beach, the evidence of record is insufficient to raise an issue of fact that this work was performed by Westinghouse. Thus there is insufficient evidence that Mr. Nuutinen was present for any routine maintenance and repair work involving asbestos-containing materials performed by Westinghouse at Point Beach. Therefore, unlike the defendant in *Peter*, the only Westinghouse activities that could have exposed Mr. Nuutinen to asbestos were part of the installation and construction of the improvement to real property, *i.e.*, the turbine generator.

Westinghouse turbine generators at Point Beach to become operational did so in 1972, which means the exposure period would have ended by 1982. Because Plaintiff's claims were not filed until well after the end of the exposure period Plaintiff's claims of exposure to asbestos from the Westinghouse turbines at Point Beach are now time-barred.

There are four exceptions to the application of the statute of repose, of which only the fourth would have potential application to this case: "This section does not apply to . . . [d]amages that were sustained before April 29, 1994." Wis. Stat. § 893.89(4)(d). Plaintiff may seek the benefit of this exception, contending that Mr. Nuutinen actually sustained damages before April 29, 1994. The Wisconsin Court of Appeals' opinion in *Peter*, however, makes clear that the word "damages," as it is used in the exception, means a "legally actionable injury," *i.e.*, "diagnosis of mesothelioma or manifestation of symptoms upon which a lawsuit could be filed," and **not** "a physical injury," such as "inhalation of asbestos fibers during exposure." *Peter v. Sprinkmann Sons Corp.*, No. 2014AP923, 2015 WL 321551 at ¶¶ 12-13 (Wis. Ct. App. Jan. 27, 2015). Additionally, the Wisconsin Supreme Court has expressly held that no "actual damage" is incurred in relation to an asbestos-related mesothelioma until such a disease manifests itself and is diagnosed, thereby giving rise to an "enforceable claim for mesothelioma." *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212, 239, 691 N.W.2d 627, 639 (Wis. 1999).

Plaintiff's claims against Westinghouse do not fall under this exception to the Wisconsin statute of repose. The Complaint seeks damages for Decedent Mr. Nuutinen's pain, suffering, medical expenses, and losses to personal property and possessions arising out of his mesothelioma diagnosis, which was made on September 13, 2010. (*Complaint* ¶ 30.) None of these damages could have been

9

Case 2:97-cv-00678-RTR    Filed 03/05/15    Page 9 of 11    Document 183

sustained prior to the statutory cutoff date of April 29, 1994. Therefore, Plaintiff's claims are barred by the Wisconsin statute of repose.

## CONCLUSION

For the above reasons, Plaintiff's claims related to Westinghouse turbines are barred by the Wisconsin statute of repose, and Westinghouse is entitled to a summary judgment in its favor as a matter of law. Therefore, Westinghouse respectfully requests that such a summary judgment be issued; that Plaintiff's claims related to Westinghouse turbines in this case be dismissed with prejudice; and that it be afforded any and all other relief to which this Court deems it entitled.

Dated this 5th day of March, 2015.

**BOWMAN AND BROOKE LLP**

By /s/ Roshan N. Rajkumar
Roshan N. Rajkumar
150 South Fifth Street, Ste. 3000
Minneapolis, Minnesota 55402
Telephone: (612) 339-8682
Facsimile: (612) 672-3200

**ATTORNEYS FOR DEFENDANT CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION**

## **CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on March 5, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF.

**BOWMAN AND BROOKE LLP**

By /s/ Roshan N. Rajkumar