# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MARYBETH NUUTINEN, Individually
and as Special Administrator for the
Estate of Charles H. Nuutinen, deceased,**

        Plaintiff,

        **-vs-**                         **Case No. 97-C-678**

**CBS CORPORATION and JOHN CRANE, Inc.,**

        Defendants.

---

## DECISION AND ORDER

---

This asbestos products liability suit was remanded from the United States Judicial Panel on Multidistrict Litigation, MDL No. 875, *In re: Asbestos Products Liability Litigation (No. VI)*, Eastern District of Pennsylvania, with three remaining defendants: CBS Corporation, John Crane, Inc., and Georgia-Pacific LLC. The plaintiff, Marybeth Nuutinen, stipulated to the dismissal of Georgia-Pacific after the remand.

Now before the Court are CBS's motion for summary judgment, John Crane's motion to dismiss/for summary judgment, and a series of motions in limine filed by CBS and the plaintiff. CBS's motion for summary judgment is denied, John Crane's motion for summary judgment is granted, and the motions in limine will be discussed herein.

## BACKGROUND

Plaintiff is the widow of the decedent, Charles H. Nuutinen. Prior to his death, Mr. Nuutinen lived in Greenville, Wisconsin. Nuutinen worked as a pipefitter from 1959 through 1996 at various job sites in Wisconsin including, as relevant here, the Point Beach Nuclear Power Station in Two Rivers. Nuutinen's duties included installation of new piping and maintenance and repair work on existing piping. In September 2010, Nuutinen was diagnosed with malignant mesothelioma. Nuutinen died on December 7, 2010.

CBS is a Delaware corporation with its principal place of business in Pennsylvania. CBS is responsible for the conduct of Westinghouse Electric Corporation. Westinghouse manufactured and designed asbestos containing equipment including, without limitation, steam generating equipment, turbines, generators, wire, motors, cranes, and electrical switchgear.

John Crane is a Delaware corporation with its principal place of business in Illinois. John Crane manufactured, distributed, sold, and/or designed asbestos products, including without limitation packing and gaskets.

Gary Vohs was a steamfitter who worked directly with Nuutinen at Point Beach on numerous occasions. Vohs worked for several months on the installation of the first of the two Westinghouse turbines at Point Beach in the 1960s. Nuutinen and Vohs performed pipefitting-type work, including working on the high pressure steam lines and the condensate lines. Vohs testified that

- 2 -

asbestos insulation was being used in the areas they were working on a regular basis, including for pipe insulation and insulating the turbine itself, causing asbestos exposure when the turbine was being installed. For more than a week, Vohs and Nuutinen worked within 50-100 feet of insulators who were cutting and shaving block insulation with handsaws and mixing bags of insulating cement with water in buckets, both of which created dust. This insulation was placed onto the Westinghouse turbine.

Vohs and Nuutinen also worked at Point Beach numerous times during maintenance shutdowns. Point Beach had at least two scheduled outages per year through most or all of the period before 1983. Each unit had at least one outage at intervals of 12 months. Point Beach outages lasted about four to six weeks. During an outage, blankets and other insulation are removed, the turbine is disassembled, valves are inspected and repacked, gaskets are changed, walls of piping and other metal parts are inspected for cracks and thickness of metal and restored by welding to proper thickness, oil and other lubricants are drained and filtered, the bearing housing is cleaned, linkage arms are greased, and other inspection and maintenance is performed. A turbine at Point Beach could hold about 3,000 gallons of oil which would take two weeks or longer to drain and clean.

Pipefitter crews were often in the outage work areas which were controlled and occupied by Westinghouse. While he was repairing pipe with

- 3 -

Nuutinen during a shutdown in the early 70's, Vohs saw insulators in their general area remove an asbestos blanket from a flange bolting to the turbine. Removable insulation can be taken off and reused without damaging the insulation itself. Blankets are one example. Other types of insulation such as the block or preformed or molded insulation can also be removed and reused many times. All these types of insulation were used at Point Beach and create dust during removal, handling, and reinstallation.

Westinghouse not only made the metal parts, but also made the insulation materials for the turbine system. Point Beach turbine asbestos insulation material was produced under the direction of Westinghouse in accordance with the insulation process specifications of Westinghouse. Due to the importance of the insulation material to proper and safe operations, Westinghouse engineers always inspected the completed turbine to confirm the insulation material was produced and installed in accordance with the Westinghouse process specifications and drawings. Westinghouse insulation process specifications had to be followed precisely to produce a proper insulation material to protect against the risk of equipment failure due to the heat loss. If the insulation didn't function properly, excessive heat caused failure of lubricants resulting in the equipment seizing up and stopping.

Point Beach files contained four different process specifications to make asbestos insulation materials for the turbines from the Westinghouse

- 4 -

engineering department: removable blanket insulation, block and molded insulation, block and plastic insulation, and spray insulation. The specifications for blankets called for use of raw asbestos cloth and yarn in the manufacture of blankets that are to be used in operations at temperatures of up to 600°f incl., from 601°f to 750°f incl., and from 751°f to 950°f incl. For block and molded insulation, instructions are provided about how to select and cut asbestos-containing block material, fit it to the surface, and anchor it with retaining wires to make a material that provides insulation. Molded material is layered one over the other and then drawn together by means of wire loops and asbestos cement is used to create the insulation. For block and plastic, instructions are provided about how to select and cut asbestos-containing block material and secure it to the surface with wire to make an insulating material. Plastic material is created by mixing water with dry components and then spreading that over wire netting to create a water-resistant insulating product. Finally, Westinghouse's "Process Specification Application of Asbestos Compound by Spraying" document describes the process of using asbestos-containing spray to create coats of insulation.

The foregoing specifications were not unique to the Point Beach project, but were used throughout all turbine projects of Westinghouse. Although some asbestos containing materials were supplied to Westinghouse by other sources, the raw materials would not be capable of being used as insulation

- 5 -

materials. The raw materials must be used to construct insulation according to Westinghouse specifications. The Westinghouse contract with Wisconsin Michigan Power Company, the original Point Beach owner, is for the purchase of "One (1) Steam turbine generator unit." Insulating materials, in accordance with Westinghouse factory specifications for installation by others, are listed as a standard feature.

No problems in turbine operations at Point Beach were caused by the insulation materials as their manufacturer met specifications, the turbine system ran properly with the insulation, and the insulation was applied and removed in a normal and customary manner. The Point Beach turbine insulation met process specifications and performed properly. William LaPointe, a millwright who performed service work on turbines, worked 75% of the Point Beach outages before 1983. According to LaPointe, the use of asbestos insulation is not a defect or deficiency in Point Beach turbine. Normal practice in turbine construction was to use asbestos for insulation materials.

## ANALYSIS

### I.    CBS's motion for summary judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the

- 6 -

rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court accepts as true the evidence of the nonmovant and draws all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Ultimately, a party resisting summary judgment must present evidence "demonstrating that there is a genuine issue for trial." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

CBS moves for summary judgment on plaintiff's turbine exposure claims on the grounds that they are barred by the Wisconsin construction statute of repose. Wis. Stat. § 893.89(2).[1] On March 20, 2014, the MDL court denied CBS's motion for summary judgment because "application of the Wisconsin construction statute of repose is more properly handled by the transferor court, …" Case No. 09-61333-ER (E.D. Pa.), ECF No. 187, at 11-12. Accordingly, CBS is renewing its motion here after the remand.

Wisconsin's construction statute of repose provides, in part, as follows:

(2) …no cause of action may accrue and no action may be

---

[1] The parties obviously agree that Wisconsin law governs this diversity action. *Vision Fin. Group, Inc. v. Midwest Family Mut. Ins. Co.*, 355 F.3d 640, 642 n.2 (7th Cir. 2004).

- 7 -

commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the *improvement to real property* after the end of the *exposure period*, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.

§ 893.89(2) (emphasis added). An "improvement to real property" is a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Kohn v. Darlington Cmty. Schools*, 698 N.W.2d 794, 801 (Wis. 2005). The "exposure period" is defined as "the 10 years immediately following the date of substantial completion of the improvement to real property." § 893.89(1).

Plaintiff concedes that Westinghouse's construction of the Point Beach turbines is an improvement to real property under § 893.89(2). However, many of plaintiffs' claims are based upon the maintenance work that Mr. Nuutinen performed over the years at the Point Beach station. *See Peter v. Sprinkmann Sons Corp.*, 860 N.W.2d 308, 315 (Wis. Ct. App. 2015) ("Daily repairs are not improvement to real property as that phrase is used in the statute of repose"). CBS counters that there is insufficient evidence that Westinghouse performed maintenance work on the Point Beach turbines that

- 8 -

resulted in the release of asbestos fibers in Mr. Nuutinen's presence. The Court does not agree. Importantly, Westinghouse does not dispute that Nuutinen worked at Point Beach during maintenance shutdowns. Such work included, for example, removing asbestos blankets from turbines. Thus it is reasonable to infer that asbestos fibers were released in Nuutinen's presence.

In the alternative, CBS requests partial summary judgment on plaintiff's construction-based exposure claims. Plaintiff argues that these claims are not barred because Westinghouse manufactured and produced the insulation material at Point Beach. § 893.89(2) ("This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material"). In *Kohn*, the Wisconsin Supreme Court held that Wisconsin's construction statute of repose does not violate equal protection by excepting material producers from its coverage.[2] The court reasoned that "excluding material producers from protection from liability when liability is based on defects in material (as opposed to the furnishing of those materials) is rational because those defects will exist regardless of the use to which the material is put." 698 N.W.2d at

---

[2] The Wisconsin Supreme Court's interpretation of Wisconsin common, statutory, and constitutional law is entitled to deference; its interpretation of the United States Constitution is not. *See TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007). No party raised an equal protection defense in the instant case.

- 9 -

815. The "act giving rise to liability – the defective design or manufacture of the materials – occurs prior to any involvement in the improvement to the property. The material is defective when it is designed or produced and remains defective regardless of the acts of third parties related to the improvement in which it is used." *Id.*

CBS argues that the "manufacturer or producer" exception is inapplicable because Westinghouse was not in the business of selling or supplying insulation for use anywhere, but only provided insulation for particular turbine construction projects. In support, CBS cites a case which held that an earlier version of the construction statute of repose did not apply to a manufacturer of light fixtures that were incorporated into an improvement to real property because the fixtures were "manufactured without any particular project considered." *Swanson Furniture Co. v. Advance Transformer Co.*, 313 N.W.2d 840, 843 (Wis. 1982). Instead, the light fixtures were "sold for use to be determined by someone else later in the commercial chain. They were not designed nor manufactured as an improvement ..., but were to be used for an improvement to any real property." *Id.* at 843-44.

CBS's argument ignores the fact that the current version of the statute clearly excepts claims based on a material provider's prior conduct of designing or manufacturing the material in question, even if the material was designed for a specific project. The Wisconsin Supreme Court conceded that

- 10 -

"there may be instances in which a material provider specifically designs a material for a particular improvement project or custom manufactures the material for that project." *Kohn* at 816. Even so, there is still a "rational basis to distinguish this class of defendant from those protected under the statute" because a "material producer that designs or produces a defective material places that material in the stream of commerce and has the ability to change a defective design. Further, the material itself remains defective throughout the life of the project in which it is used." *Id.* Here, the alleged defect is that the insulation material produced by Westinghouse releases asbestos fibers when removed or installed. Westinghouse had the ability to change the defective design, and the insulation material remained defective while the turbines were in use. Thus, the plaintiff's claim is not barred by the construction statute of repose.

## II. John Crane's motion to dismiss

John Crane argues that it must be dismissed from this case because the plaintiff produced no evidence to support a claim against it. The plaintiff has no response to this contention other than to argue that John Crane's motion is untimely pursuant to the scheduling order issued in the MDL court. However, the plaintiff was ordered by the MDL court to "identify each product that you contend caused or contributed to plaintiff's asbestos-related illness, and which defendants you contend [are] liable for injury arising from [the]

- 11 -

product." In response, the plaintiff named CBS, but not John Crane. In this context, it appears that the inclusion of John Crane in the remand order was simply a mistake. The Court can correct this mistake by dismissing John Crane from this case.

John Crane's motion was labeled a motion to dismiss, but John Crane recognizes that the proper remedy is an order for summary judgment because the plaintiff failed to create an issue of fact to justify proceeding to trial against it. *See, e.g., Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial").

## III.  Motions in limine

### A.  Motions filed by CBS

1.     CBS's first motion is an omnibus motion with 56 subparts. The Court will restrict its discussion to those parts that are opposed by the plaintiff. All unopposed motions are granted. All motions that are unopposed if mutual are granted on that condition. Other exceptions are noted below.

***

<u>Number 14</u>. Motion to exclude any testimony, evidence, reference, argument, statement, suggestion, inference, or comment about job sites at

- 12 -

which plaintiff's decedent did not work. This evidence is relevant to a variety of issues in this case, including causation and the standard of care. *Estate of Carey v. Hy-Temp Mfg., Inc.*, 929 F.2d 1229, 1235 (7th Cir. 1991); *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988); *Morden v. Cont'l AG*, 611 N.W.2d 659, 675 (Wis. 2000). Therefore, the motion is denied.

**Number 15**. Any testimony, evidence, reference, argument, statement, suggestion, inference, or comment about workplace conditions to which Plaintiff's Decedent was not exposed. This motion is denied for the same reason Number 14 was denied.

**Number 16**. Reference to exposure to asbestos in a manner, or of a type, dissimilar to that in this case. This motion is denied because the term "dissimilar" is too vague to issue a ruling before trial.

**Number 18**. Comment that CBS/Westinghouse products had any design defects other than those specifically referenced in the amended complaint. This motion is denied because relevant evidence is not limited to that which is specifically referenced in the complaint.

**Number 19**. Plaintiff's burden to prove her claims by a preponderance of the evidence can be likened or analogized to a "tipping" of the "scales of justice," or that evidence in favor of plaintiff need only be "slightly" more than the evidence favoring the defendants. This motion is denied because the foregoing language is consistent with the Seventh Circuit Pattern Jury

- 13 -

Instruction on the Burden of Proof, § 1.27: "When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true."

**Number 22**. Reference to the absence or identity of CBS/Westinghouse's corporate representative (subpart h). This motion is denied-in-part because plaintiff intends to call a designated witness from Westinghouse.

**Number 26**. Reference to the "Golden Rule" and the alleged ethical or moral obligations of CBS/Westinghouse as a product manufacturer, including an comment or argument that CBS/Westinghouse has failed to comply with moral or ethical standards, or that CBS/Westinghouse did not act as a moral, ethical, or caring company. This motion is denied to the extent that the foregoing is relevant to the standard of reasonable care.

**Number 27**. Comment about what CBS/Westinghouse's experts or CBS/Westinghouse's engineers have testified to or said in other cases. This motion would not include testimony of Richard Smith, if he is unable to appear at trial. This motion is denied without prejudice. The Court is unable to determine the admissibility of this brand of evidence without a more specific proffer of evidence.

**Number 28**. Reference to media reports of any kind regarding issues with asbestos or asbestos-containing products, CBS/Westinghouse,

- 14 -

CBS/Westinghouse's witnesses, plaintiff, plaintiff's witnesses, this case, or any other allegedly similar case. Denied in the absence of a more specific proffer of evidence.

**Number 30**. Comment about advertising or marketing materials regarding CBS/Westinghouse products. Denied because advertising and marketing materials may be used to prove that CBS breached the duty of reasonable care.

**Number 35**. Statement about the amount of money spent to prosecute or defend this case. Granted except as to fees paid to experts or other witnesses.

**Number 40**. Comment about the meaning, or interpretation, of documents created by CBS/Westinghouse. Denied on the assumption that the commented-upon documents are admissible at trial.

**Number 41**. Comment or argument about any wrongdoing, improper conduct, or failure of any sort on the part of CBS/Westinghouse, other than those specific allegations contained in the amended complaint. Denied to the extent that the probative value of this evidence is not substantially outweighed by the dangers listed in Federal Rule of Civil Procedure 403.

**Number 43**. Argument or comment that informs, tends to inform, or argues the effect of the jury's answers to the special issues, including but not limited to, any statement about what percentage of liability or responsibility

- 15 -

must be placed on CBS/Westinghouse in order for plaintiff to recover, or that plaintiff's recovery will be barred if the jury does not find a certain percentage, or liability percentages pertaining to joing and several liability, or statements of similar effect. Granted, except that counsel may argue or comment upon the jury instructions in this case.

**Number 45**. Reference or comment regarding the claimed knowledge of the asbestos industry, its practices, and the roles of asbestos suppliers. Denied because this evidence is relevant to the standard of care.

**Number 52**. Calling any witness without 24-hours advance notice to CBS/Westinghouse. Granted on the condition that all parties give 48 hour notice for live witnesses and 24 hours for recorded testimony witnesses.

**Number 53**. Showing or reading documents to the jury that have not been admitted into evidence. Granted, subject to the use of documents or demonstrative exhibits that are not admitted into evidence. *See* Fed. R. Evid. 803(18).

**Number 55**. Prevent the jury from consulting any and all treatises, periodicals, and/or pamphlets during deliberation. Granted, subject to Fed. R. Evid. 803(18).

**Number 56**. Require all counsel to disclose the sequence of witnesses to be called in this matter, particularly expert or medical witnesses, at least 24 hours prior to the time of their testimony. Granted on the condition of 48-

- 16 -

hour notice for live witnesses.

*** 

2.     <u>Evidence of other asbestos lawsuits</u>. This motion is unopposed and is granted.

3.     <u>Pictures, photographs, or videotapes showing the plaintiff or other person in a condition of ill health or weakness</u>. CBS appears to concede that pictures of the decedent while he was sick are relevant to the issue of damages. However, CBS argues that the probative value of this evidence is outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Undue prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*, Advisory Committee Notes. Photographs, in particular, can be unfairly prejudicial if they are "sufficiently shocking or repulsive" to necessarily elicit an emotional response from the jury. *United States v. Souffront*, 338 F.3d 809, 825 (7th Cir. 2003). The Court cannot say whether this standard is met without seeing the pictures. Therefore, the Court will reserve ruling on this issue. The Court also notes that pictures are likely cumulative of testimonial evidence that will be presented at trial. Fed. R. Evid. 403. CBS did not press this issue in great detail, so the Court again will reserve ruling until trial.

4.     <u>Use of the terms "Asbestos Industry," "Members of the Asbestos Industry," "Asbestos Cancer" or "Asbestos Victim."</u> CBS argues that the use of

- 17 -

these terms is unduly prejudicial. Fed. R. Evid. 403. Plaintiff does not oppose this motion with respect to asbestos industry or members of the asbestos industry. Plaintiff argues that the latter two terms can be used because they are descriptive terms for a person with mesothelioma. The Court does not agree because asbestos is not the only cause of cancer or mesothelioma. In other words, a person with mesothelioma is not necessarily a victim of asbestos. Since causation is a contested issue, this motion will be granted.

5. <u>Portions of medical bills not accepted for payment by decedent's insurance</u>. Plaintiff's damages are not impacted by the scope of the decedent's insurance coverage. Whether such expenses are reasonable is another matter, but that is an argument to make to the jury. *Koffman v. Leichtfuss*, 630 N.W.2d 201, 213 (Wis. 2001) ("There is no justification in the operation of any of these rules to limit medical expense damages to the amounts actually paid by the plaintiff and his insurers").

6. <u>Exclude evidence suggesting CBS/Westinghouse is responsible for asbestos or asbestos-containing parts from other manufacturer's products</u>. CBS seeks to exclude the introduction of such evidence unless plaintiff meets her burden of proof. This is a confusing motion because it is unclear how the plaintiff could meet her burden of proof without introducing evidence in the first instance. This motion is denied.

7. <u>Exclude all evidence and argument regarding</u>

- 18 -

CBS/Westinghouse's alleged duty to warn. The Court agrees with the plaintiff that this is a disguised – and untimely – motion for summary judgment. This claim was remanded by the MDL court for trial, and excluding all evidence relevant to the claim is tantamount to striking the claim.

8.      Exclude any purported expert testimony or other evidence claiming that a "single fiber" of asbestos can cause, or increase the risk of, mesothelioma, lung cancer, or other asbestos-related diseases. This motion is unopposed because plaintiff's experts will not testify that a "single fiber" caused decedent's mesothelioma or increased the risk of disease.

9.      Reference to purchase orders tending to show that asbestos-containing products came into decedent's places of employment. This motion is unopposed because plaintiff does not have purchase order evidence. Plaintiff understands that the turbine and switchgear documents produced by CBS are not within the scope of this motion.

10.      Evidence of CBS/Westinghouse's potential insurance coverage. This motion is unopposed.

11.      Disclose the amounts and terms of any pretrial settlements and bankruptcy claims. This motion is denied on the assumption that the relevant documents have been voluntarily produced and will be supplemented, if necessary.

12.      Reference to post-sale duty to warn. This motion is moot because

- 19 -

the plaintiff is not pursuing this theory.

13. <u>Exposure to other manufacturers' asbestos-containing products</u>. Plaintiff does not oppose the admission of evidence that the decedent was exposed to asbestos-containing products not made by CBS, on the assumption that such evidence was timely disclosed during the course of discovery. On that assumption, this motion will be granted.

14. <u>Evidence of trade associations in which CBS/Westinghouse was not a member and did not participate</u>. Plaintiff agrees that she will not reference any of the trade associations listed in CBS's motion.

15. <u>Exclude evidence of ancient documents if such documents have not been properly identified and disclosed by plaintiff</u>. Plaintiff does not oppose this motion.

16. <u>Exclude lay testimony as to whether certain products contained asbestos</u>. CBS believes that the plaintiff may elicit testimony from decedent's coworkers about decedent being exposed to asbestos-containing products. The Court agrees with the plaintiff that this motion is premature. Decedent's coworkers spent much of their life working with or around asbestos insulation or gaskets. They can offer lay or expert testimony in this regard, assuming that a proper foundation is laid at trial. Fed. R. Evid. 602, 701.

17. <u>Limit expert testimony of Dr. Henry A. Anderson to his opinions and conclusions made in the written report where he examined decedent's</u>

medical records. This motion is unopposed.

18.     <u>Limit expert testimony of Dr. Arnold R. Brody to his general opinions and conclusions regarding asbestos and asbestos-causing diseases</u>. This motion is unopposed.

19.     <u>Limit expert testimony of Dr. Jerrold L. Abraham to his opinions and conclusions made in the written report where he examines decedent's medical records</u>. This motion is not opposed, subject to the qualification that Dr. Abraham will answer hypothetical questions, based on the evidence presented to the jury, that exposures to Westinghouse turbines and switchgear are a part of the cumulative exposure that caused the mesothelioma. This qualification does not conflict with the objections listed in CBS's motion.

20.     <u>Limit expert testimony of Frank M. Parker III to general opinions and conclusions made in the written report examining decedent's alleged asbestos exposure</u>. This motion is unopposed because Mr. Parker will not be a witness in this case.

21.     <u>Exclude testimony of Joseph Ferriter and William LaPointe</u>. Mr. Ferriter was disclosed as an expert witness based on his career as a pipefitter. Mr. LaPointe, referenced above, was disclosed as an expert witness based on his career as a millwright.

Rule 702 of the Federal Rules of Evidence requires the Court to

perform a "gatekeeping" function before admitting expert scientific testimony in order to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The Court must make the following inquiries: first, the expert must be qualified by knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013).

CBS does not challenge the qualifications of either witness. Ferriter worked as a journeyman pipefitter from 1958 until he retired in 2002. Ferriter continued to consult after retirement. He has testified at several trials. LaPointe worked on hundreds of jobs in powerhouses and other industrial settings over his 30-year career as a millwright. Both witnesses are qualified to offer expert testimony.

Ferriter will testify about the responsibilities of property owners and other contractors to coordinate large industrial jobsite work. This is relevant to the "no responsibility" defense that attempts to shift the blame to property owners and other contractors based on Ferriter's understanding of the common practices and procedures followed at industrial job sites. This

- 22 -

evidence is relevant, reliable, and will assist the trier of fact.

LaPointe knows the materials used to construct the turbines, and he worked at Point Beach during outages, so he can explain how assembly and disassembly is conducted at that facility. As with Ferriter, LaPointe can also shed light on the "no responsibility" defense with respect to millwrights. This evidence, is relevant, reliable, and will assist the trier of fact.

**B.     Motions filed by the plaintiff**

1.     <u>Asbestos exposures at locations or from products which were not disclosed or found to be irrelevant or speculative during the discovery process as alleged causes of plaintiff's injuries</u>. The first part of this motion seeks to preclude CBS from relying on evidence that was not disclosed during the course of discovery. CBS does not object to this aspect of the motion. CBS objects to the second part of the motion, which seeks to preclude CBS from relying on evidence that was "found to be irrelevant or speculative" during the discovery process. Found irrelevant or speculative by whom? The Court will entertain objections as the case proceeds, but will not impose a broad limitation pre-trial.

2.     <u>That plaintiff has submitted claims in bankruptcy unless CBS lays the foundation to prove the bankruptcy claim submissions contain evidence of exposure which is otherwise admissible to support a claim against another entity</u>. Plaintiff argues that the mere filing of a claim with a

- 23 -

bankruptcy trust does not constitute evidence of exposure. But it could be relevant, especially if combined with other admissible evidence, a condition that is conceded by the plaintiff. Claim submission documents may raise hearsay issues, but without a specific proffer of evidence, this concern is only hypothetical. The Court will rule on hearsay objections as appropriate at trial.

3.    <u>That plaintiff made claims against defendants who were granted summary judgment in this case</u>. Plaintiff argues that in granting summary judgment for particular defendants, the court has already found that there is no proof of exposure to asbestos for which those defendants can be held responsible. This isn't necessarily true, as there are other elements of a claim besides exposure that may not have been satisfied, resulting in a grant of summary judgment. Without a specific example, the Court will reserve ruling until trial, if necessary.

4.    <u>The time or circumstances under which plaintiff employed his attorney</u>. CBS objects and represents that it will approach the Court if it believes that circumstances warrant the admission of such evidence (including, for example, if the plaintiff opens the door to its admission). On that understanding, this motion is denied without prejudice.

5.    <u>That the law firm Cascino Vaughan Law Offices represents, or has been referred other cases involving, other asbestos-exposed individuals and/or asbestos product liability actions, except to show bias of experts or of a</u>

- 24 -

witness who is represented by CVLO. This motion is unopposed.

6. <u>Asbestos lawsuits, or plaintiff's claims, are in any way "lawyer-made" lawsuits or claims, or in any other way infer that such cases are generated or caused by plaintiff's counsel.</u> Denied without prejudice, for the reasons stated with respect to plaintiff's motion number 4.

7. <u>Use of asbestos containing insulation on United States Navy ships in World War II or in other government defense industry work, without warnings or safety measures being required by the government, is evidence that private entities need not warn or instruct about precautionary matters.</u> This motion refers to the so-called "state-of-the-art" defense. A majority of jurisdictions admit state of the art evidence in a strict liability failure to warn claim. 1 Toxic Torts Litigation Guide § 6.21. Although not entirely clear, it seems as if Wisconsin would follow the majority rule. *See Kolpin v. Pioneer Power & Light Co., Inc.*, 469 N.W.2d 595, 608 (Wis. 1991) (citing *D.L. v. Huebner*, 329 N.W.2d 890 (Wis. 1983), wherein "evidence of the state-of-the-art of a product was admitted … based on alternative theories of strict liability and negligence"). Moreover, state-of-the-art evidence is relevant to plaintiff's negligence theory. 1 Toxic Torts Litigation Guide § 6.14 ("If an action is in negligence it is well settled that state of the art evidence is admissible").

This motion also references the military contractor defense, but as the

- 25 -

Court understands the situation, CBS will not be asserting this defense. *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) ("the government contractor's defense … is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning, [the defendant] was … acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States").

This motion is denied.

8. <u>The United States government stockpiled asbestos</u>. This motion is denied for the reasons stated with respect to plaintiff's motion number 7.

9. <u>Asbestos insulation products "won the war" or any reference to such products being necessary during World War II or any other war</u>. Stating that asbestos insulation products "won the war" would be unfairly prejudicial, Fed. R. Evid. 403, but referring to their use during World War II is a relevant and not unfairly prejudicial for the reasons stated with respect to plaintiff's motion number 7.

10. <u>Plaintiff's pre-existing medical conditions of any type unless and until a proper foundation is laid, outside the presence of the jury, as to the admissibility and relevance of such information to causation of damages, such as pain and suffering or shortened life expectancy</u>. This motion is denied to the extent that the plaintiff seeks to prevent CBS/Westinghouse from presenting evidence supporting a defense to plaintiff's claims for damages or

- 26 -

evidence of additional factors that may have contributed to decedent's alleged health condition.

11. <u>That the U.S. government's ban of asbestos was overturned on appeal by the Fifth Circuit Court of Appeals</u>. CBS represents that it will not raise this issue, except as a counter to the plaintiff if she raises the government's ban in the first instance. On that understanding, and for the reasons stated with respect to plaintiff's motion number 7, this motion is denied.

12. <u>References, other than during jury selection, to names of persons as being potential witnesses or that they were identified in interrogatory answers or other discovery documents as potential witnesses absent a finding by the court that a missing witness instruction is proper under the Seventh Circuit Jury Instructions, § 1.19</u>. CBS agrees that neither party may argue to the jury that an adverse inference should be drawn from the other party's failure to call a witness unless the test articulated in *Oxman v. WLS-TV* is satisfied. 12 F.3d 652, 661 (7th Cir. 1993) (a party can argue to the trier of fact that an adverse inference should be drawn from another party's failure to call a witness if the missing witness was peculiarly in the power of the other party to produce, which can be shown in two ways: (1) that the witness is physically available only to the opponent, or (2) that the witness has a relationship with the opposing party that practically renders his testimony unavailable to the

- 27 -

moving party). Therefore, this motion is granted.

13. <u>That plaintiff was required to present documentary evidence from defendant to prove the presence of its asbestos in proximity to plaintiff.</u> The lack of documentary evidence regarding asbestos exposure is a relevant issue in this case. This is not to say that documentary evidence is necessary for the plaintiff to succeed, but the parties are free to argue the point, and the Court will instruct the jury about the type of evidence they may consider in their deliberations. This motion is denied.

14. <u>That plaintiff has received, has been entitled to receive, or has applied for benefits of any kind from a collateral source, including, but not limited to, the following: (a) benefits from hospitalization, medical or other collateral insurance coverage; (b) Social Security and pensions, whether a union pension or otherwise; and (c) life insurance proceeds.</u> CBS concedes that this evidence is barred by the collateral source rule, unless the plaintiff opens the door for impeachment purposes. *Leitinger v. DBart, Inc.*, 736 N.W.2d 1, 9 (Wis. 2007). Subject to that exception, this motion is granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. CBS's motion for summary judgment [ECF No. 183] is **DENIED**;

2. John Crane's motion for summary judgment [ECF No. 184] is **GRANTED**;

- 28 -

3.    CBS's Motion in Limine #1 – Omnibus [ECF No. 154] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

4.    CBS's Motion in Limine #2 – Evidence of Other Lawsuits [ECF No. 155] is **GRANTED**;

5.    CBS's Motion in Limine #3 – Use of Pictures, Videos, etc. [ECF No. 156] is **DENIED** without prejudice;

6.    CBS's Motion in Limine #4 – Prohibit Use of Asbestos Terms [ECF No. 157] is **GRANTED**;

7.    CBS's Motion in Limine #5 – Exclude Portions of Medical Bills [ECF No. 158] is **DENIED**;

8.    CBS's Motion in Limine #6 – Exclude Evidence that CBS is Responsible for Others' Products [ECF No. 159] is **DENIED**;

9.    CBS's Motion in Limine #7 – Duty to Warn [ECF No. 160] is **DENIED**;

10.    CBS's Motion in Limine #8 – Single Fiber Theory [ECF No. 161] is **GRANTED**;

11.    CBS's Motion in Limine #9 – Purchase Order Evidence [ECF No. 162] is **GRANTED**;

12.    CBS's Motion in Limine #10 – Insurance Coverage [ECF No. 163] is **GRANTED**;

13.    CBS's Motion in Limine #11 – Pretrial Settlements and

- 29 -

Bankruptcy Claims [ECF No. 164] is **DENIED**;

14.     CBS's Motion in Limine #12 – Post-Sale Duty to Warn [ECF No. 165] is **DENIED**;

15.     CBS's Motion in Limine #13 – Exposure to Others' Products [ECF No. 166] is **GRANTED**;

16.      CBS's Motion in Limine #14 – Trade Associations [ECF No. 167] is **GRANTED**;

17.     CBS's Motion in Limine #15 – Ancient Documents [ECF No. 168] is **GRANTED**;

18.     CBS's Motion in Limine #16 – Lay Testimony as to Asbestos [ECF No. 169] is **DENIED**;

19.     CBS's Motion in Limine #17 – Testimony of Dr. Anderson [ECF No. 170] is **GRANTED**;

20.     CBS's Motion in Limine #18 – Testimony of Dr. Brody [ECF No. 171] is **GRANTED**;

21.     CBS's Motion in Limine #19 – Testimony of Dr. Abraham [ECF No. 172] is **GRANTED**;

22.     CBS's Motion in Limine #20 – Testimony of Dr. Parker [ECF No. 173] is **DENIED** as moot;

23.     CBS's Motion in Limine #21 – Testimony of Ferriter and LaPointe [ECF No. 174] is **DENIED**;

- 30 -

24.    Plaintiff's motions in limine [ECF No. 175] are **GRANTED-IN-PART** and **DENIED-IN-PART**; and

25.    The Court will conduct a telephonic status conference on **June 24, 2015** at **10:00 a.m. (Central Time)** to discuss dates for trial. The Court will initiate the call.

Dated at Milwaukee, Wisconsin, this 9th day of June, 2015.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 31 -